IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSEMARIE RISSMILLER | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 15-5731 |
| CAROLYN W. COLVIN, ACTING | : |
| COMMISSIONER OF THE SOCIAL | : |
| SECURITY ADMINISTRATION | : |

**KEARNEY, J.**                                                                   **October 18, 2016**

## MEMORANDUM

Persons challenging the Social Security Commissioner's denial of disability benefits are entitled to a full hearing before an experienced administrative law judge where they can testify, present expert testimony and testimony from their treating physician demonstrating disability. The administrative law judge follows a detailed well-established procedure to evaluate disability. A challenge to an administrative law judge's post-hearing denial of disability benefits must show more than disagreement with the judge's specific credibility findings. Absent showing more than a disagreement with credibility findings or weight of considered evidence, we deny a petition for review in the accompanying Order.

**I. Background**

Rosemarie Rissmiller is a 53-year-old married woman.[1] She has an eleventh grade education.[2] She worked as a hand-packer and school bus driver.[3] Ms. Rissmiller testified she last worked on April 20, 2012.[4] She testified a car accident on April 23, 2012 kept her from working.[5] As a result of the car accident, Ms. Rissmiller suffered a fracture of the fifth finger and a compression fracture of the lumbar spine at L1, 50-60% loss of height.[6]

Ms. Rissmiller applied for Social Security disability benefits on October 19, 2012, claiming disability based on fractured vertebrae and osteoporosis.[7] The Social Security Administration denied her claim. She timely requested a hearing.

At the January 30, 2014 hearing before Administrative Law Judge Paula Garrety, Ms. Rissmiller testified she is able to conduct the daily activities of cleaning, mopping, sweeping, and dusting.[8] She described cleaning the bathroom and simple cooking.[9] Ms. Rissmiller described washing the dishes with assistance and loading the laundry, the clothes usually carried to the washing room for her.[10] She showers and dresses herself, and she can drive five miles on her own.[11]

ALJ Garrety found her to have "the following sever impairments: residuals from fractured vertebrae with lumbar fusion, and osteoporosis."[12] ALJ Garrety found these impairments do not meet or equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.[13] ALJ Garrety determined Ms. Rissmiller had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she would require an opportunity to alternate positions."[14]

## II. Analysis

Ms. Rissmiller argues ALJ Garrety's residual functional capacity (RFC) finding of light work with an opportunity to alternate positions is not supported by substantial evidence because: 1) Ms. Rissmiller's testimony does not support a finding of capability to perform a range of light work; 2) ALJ Garrety's RFC assessment is unreviewable because it does not specify the frequency or duration of the need to alternate positions; and, 3) ALJ Garrety did not give proper weight to the opinion of Ms. Rissmiller's treating doctor, Dr. Didimamof.[15] Ms. Rissmiller also argues ALJ Garrety failed to develop the record by: 1) failing to order a consultative

examination; and, 2) not asking her whether she was treated after January 30, 2013, and then largely basing the RFC upon a lack of treatment after January 30, 2013.[16]

An administrative law judge applies a five-step sequential evaluation process to determine if a claimant has a disability.[17] At step one, the claimant must prove she is not working at a "substantial gainful activity."[18] At step two, the claimant must prove she has a "severe impairment."[19] At step three, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments.[20] If the claimant's impairment matches or equals a listing, he is presumed disabled.[21] If the impairment does not match or equal a listing, then at step four, the claimant must show he does not have the "residual functional capacity" to perform his previous work.[22] At step five, the Social Security Administration must determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[23] The burden is on the Commissioner at step five.[24]

We review an ALJ's findings of fact "under the deferential 'substantial evidence' standard."[25] "We must affirm the ALJ so long as his conclusions are supported by substantial evidence."[26] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"[28] "We review the record as a whole to determine whether substantial evidence supports a factual finding."[29]

### A. Ms. Rissmiller's testimony supports ALJ Garrety's finding of her capability to perform a range of light work.

Ms. Rissmiller argues ALJ Garrety's determination of her RFC to perform a range of light work is not supported by her testimony if fully accepted.[30] ALJ Garrety found Ms. Rissmiller's testimony to be generally credible.[31] Ms. Rissmiller cites her testimony of being able to lift a maximum of 5 pounds and walking for 20 minutes twice a week.[32] Ms. Rissmiller

3

considers these data points conclusive and compares them with the regulatory definition of "light work."[33]

As defined, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."[34]

As the finder of fact, an ALJ evaluates credibility of witnesses.[35] To assess a claimant's credibility, an ALJ must consider several factors, including the claimant's daily activities, the intensity of their symptoms, the treatment they have received and other factors concerning their functional limitations and restrictions.[36]

Ms. Rissmiller confuses the notion of an ALJ finding her testimony to be generally credible with the notion of an ALJ accepting (or being required to accept) all of her testimony and claim of disability. Instead of accepting Ms. Rissmiller's disability claim, ALJ Garrety accepted her testimony of daily activities and lack of medication and recent medical treatment.[37] From those daily activities, lack of medication and lack of recent medical treatment, the ALJ determined Ms. Rissmiller has the RFC to perform light work.[38]

ALJ Garrety relied on the evidence of Ms. Rissmiller's daily activities in her opinion.[39] ALJ Garrety asked Ms. Rissmiller, "Can you tell me basically [sic] your daily activities during the day?"[40] Ms. Rissmiller responded, "I do some cleaning, mopping, sweeping, dusting. I clean the bathroom. I try to do a little bit of everything everyday so it doesn't build up on me."[41] ALJ Garrety asked Ms. Rissmiller the distance she can drive in a day, and Ms. Rissmiller argued she

can drive five miles on her own.[42] ALJ Garrety asked Ms. Rissmiller about her daily activities around the house.[43] Ms. Rissmiller responded, "They could be a number of things. I try to keep the living room decent, which would be dusting, using a dry mop . . . . I do simple cooking. I get assistance with washing the dishes. I can put the laundry into the washer. The baskets are usually taken downstairs for me. I shower myself[,] [d]ress myself[,] [and] [c]omb my own hair."[44]

ALJ Garrety also relies on evidence of the intensity of Ms. Rissmiller's symptoms and the treatment she received.[45] ALJ Garrety considered the lack of medication and the fact Ms. Rissmiller has "minimal evidence of any medical treatment within the past 12-months."[46] Beyond those considerations, ALJ Garrety found "there is suggestion [sic] within the record that the claimant's daily activities may be somewhat greater than what she has generally reported. For instance, in December 2012, she denied any back pain or weakness, but described transient numbness 'after a day full of strenuous activities' ([Exhibit 2F/8])."[47]

### B. ALJ Garrety's RFC assessment is reviewable after asking an at-will hypothetical to the Vocational Expert.

An ALJ is "not require[d] to use particular language or adhere to a particular format in conducting his [or her] analysis."[48] The ALJ must provide "sufficient development of the record and explanation of findings to permit review" of the decision read as a whole.[49] "A residual functional capacity assessment that permits a claimant to sit or stand 'at will' may not be 'totally compliant with the strictest interpretation of SSR 96-9p but [courts] have generally found the inclusion of such a limitation to be harmless error.'"[50]

Ms. Rissmiller argues ALJ Garrety's determination of her residual functional capacity is unreviewable because it does not specify how frequently she must be able to alternate positions. The ALJ referenced frequency and the Vocational Expert understood the issue. The Vocational Expert's understanding came from two sources: the case's background information reviewed

5

before the hearing and the Dictionary of Occupational Titles, which vocational experts use to answer hypotheticals by defining jobs.

The case background information contains a Work History Report filed by Ms. Rissmiller. In the report, Ms. Rissmiller described her daily duties as a school bus driver involved a half hour of walking, a half hour of standing, and a half hour of climbing. From those non-sitting activities, the Vocational Expert could find Ms. Rissmiller's old work included the opportunity to alternate positions, but not at will.

ALJ Garrety developed the Vocational Expert's earlier review, asking the Vocational Expert, "Have you reviewed the file and been present throughout Ms. Rissmiller's testimony?"[51] The Vocational Expert responded, "Yes."[52] ALJ Garrety then referred to Ms. Rissmiller's prior employment including "work as a school bus driver" and "hand packing."[53] When ALJ Garrety posed the hypothetical to the Vocational Expert, ALJ Garrety directed him to "assume the individual is capable of performing a range of light work that does not require prolonged standing or walking. In other words, light with an option to alternate positions. Obviously this would preclude the past work . . . ."[54] The limitation precluding past work, where Ms. Rissmiller could alternate positions but not at will, allowed the Vocational Expert to understand ALJ Garrety's hypothetical included a limitation to sit or stand at will.

The Dictionary of Occupational Titles evidences employment as a school bus driver does not include an at-will option to alternate positions but does include the option to occasionally alternate positions.[55] Even if the Vocational Expert did not review Ms. Rissmiller's file before the hearing, he knew from the Dictionary of Occupational Titles her prior work included an opportunity to alternate positions but not at-will. The Vocational Expert knew the hypothetical posed to him excluded the ability to perform Ms. Rissmiller's prior work (excluded the ability to

alternate positions but not at-will). Given the Vocational Expert's understanding of the hypothetical's exclusion of occupations with a limited (not at-will) option to alternate positions, the hypothetical posed by ALJ Garrety implicitly carried an at-will option to alternate positions. Ms. Rissmiller's argument fails because the ALJ inferred the option to alternate positions is at will, which was understood by the Vocational Expert, and such a limitation is harmless error.

### C. ALJ Garrety did not erroneously evaluate treating doctor's opinion.

Ms. Rissmiller argues ALJ Garrety erred by not according significant weight to the medical opinion of her treating physician, Dr. Didimamof.[56] "The ALJ provided three bases for this[]. First, there was no medical treatment since December 2012. Second, the medical evidence of record evidences improvement in the Plaintiff's condition. Third, Dr. Didimamof's findings are unsupported by the objective medical findings."[57]

The medical opinions of a treating physician "are entitled to substantial and at times even controlling weight."[58] A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[59] In rejecting a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion."[60] The ALJ must explain on the record his reasons for disregarding a treating physician's opinion.[61] It cannot be for "no reason or for the wrong reason."[62]

An ALJ may decide not to credit a treating physician's opinion only upon providing an adequate explanation.[63] For example, an ALJ may reject a treating physician's opinion when it is not supported by sufficient clinical data.[64] "[T]he United States Court of Appeals for the Third

Circuit has also repeatedly held that when a treating physician's notes, analyzed as a whole, contradict the physician's opinion on a claimant's ability to work, an ALJ may properly rely on those notes in determining that the opinion is entitled to little or no weight."[65] An ALJ may reject a treating physician's opinion in favor of a non-examining physician if the latter opinion is more consistent with the evidence.[66]

Where a physician fails to provide an explanation supporting his opinion, this "by itself would justify the ALJ's decision to accord [it] little weight."[67] This is especially the case when the opinion is provided in a checklist form "which require[s] only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated."[68] Such forms provide "'weak evidence at best' in the context of a disability analysis."[69]

Ultimately, however, determining a claimant's RFC is the province of the ALJ and not of the treating physician. An ALJ is required to conduct an independent analysis of the relevant evidence and to reach his or her own determination regarding the claimant's RFC.[70] "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence is part of the ALJ's duties."[71]

Ms. Rismiller's argument fails because the opinion of her treating physician, Dr. Didimamof, is in the form of a checklist with fill-in-the-blank sections.[72] The document does not provide a substantive basis for his conclusions.[73] This "by itself [] justif[ies] the ALJ's decision to accord [it] little weight."[74] Because ALJ Garrety justifiably reviewed the document, we do not need to determine the adequacy of the other reasons she expressed for not according the treating doctor's opinion greater weight.

### D. ALJ Garrety did not err by not ordering a consultative examination.

Ms. Rissmiller argues "the ALJ did not fulfill her duty to fully develop the record and should have requested a consultative examination to obtain an opinion as to the extent of Ms. Rissmiller's limitations or the current severity of Ms. Rissmiller's limitations."[75]

"Under [Social Security Administration] regulations, an ALJ '*may* decide to purchase a consultative examination' where 'there is an indication of a change in [claimant's] condition that is likely to affect [claimant's] ability to work.'"[76] Likewise, an ALJ may order a consultative examination if "additional evidence needed is not contained in the records of [the claimant's] medical sources."[77] The regulations explain, "Before purchasing a consultative examination, [the ALJ] will consider not only existing medical reports, but also the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's] file."[78] "[The ALJ] *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Social Security Administration] to make a determination or decision on [a] claim."[79] "[W]hen there is not sufficient medical evidence in the record to determine whether the claimant is disabled, '[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for the ALJ to make an informed decision.'"[80]

ALJ Garrety did not need to order a consultative examination because there was no insufficiency of evidence nor an "indication of a change in [Ms. Rissmiller's] condition that is likely to affect [her] ability to work."[81] Ms. Rissmiller does not identify a need for any additional evidence not contained in her medical records. The little evidence of recent treatment and medication does not indicate a need for additional evidence. This instead indicates there is no other evidence of a disability.

9

### E. ALJ Garrety did not err by not asking Ms. Rissmiller whether she was treated after January 30, 2013, and then largely basing the RFC upon a lack of treatment after this date.

Ms. Rissmiller argues ALJ Garrety erred in relying on the lack of medical treatment received by her after January 30, 2013 because she did not ask her if she had any other evidence of medical treatment after this date.

"The burden lies with the claimant to develop the record regarding . . . [his] disability because the claimant is in a better position to provide information about . . . [his] own medical condition."[82] "'[A] claimant represented by counsel is presumed to have made his best case before the ALJ.'"[83] "The onus is therefore on counsel to ensure that the ALJ is aware of all of the evidence favorable to a claimant's case and to probe all of the relevant issues."[84]

ALJ Garrety did ask if Ms. Rissmiller had any other evidence to present.[85] ALJ Garrety asked if there was "any further evidence to present," to which Ms. Rissmiller's counsel replied there was no more evidence.[86] Quite simply, the ALJ cannot be expected to seek out evidence, when she does not know whether such evidence exists, particularly after Ms. Rissmiller's counsel informed ALJ Garrety of being unaware of any outstanding evidence.[87]

### III. Conclusion

ALJ Garrety's RFC finding is supported by substantial evidence. ALJ Garrety did not fail to develop the record. Remand is not required because Ms. Rissmiller does not identify a mistake in ALJ Garrety's five-step analysis. Challenges based solely on credibility findings and resultant weight of evidence analysis does not mandate vacating the ruling of the Administrative Law Judge. The deferential substantial evidence standard requires us to deny Ms. Rissmiller's petition for review in our accompanying Order.

---

[1] (R. 29).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] (R. 206, 208).

[7] (R. 61, 128).

[8] (R. 46).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] (R. 28 (citing 20 CFR 404.1520(c)).

[13] (R. 28-29).

[14] (R. 29-33).

[15] (ECF Doc. No. 11, at 4.).

[16] *Id.*

[17] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[18] *Id.*

[19] *Id.*

[20] *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[21] *Ramirez*, 372 F.3d at 550.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 555.

[25] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting 42 U.S.C. § 405(g)).

[26] *Id.* (citing *Craigie v. Bowen,* 835 F.2d 56, 57 (3d Cir. 1987)).

[27] *Id.* (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)).

[28] *Id.* (quoting *Rutherford,* 399 F.3d at 552).

[29] *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir.1999)).

[30] (ECF Doc. No. 11, at 5.).

[31] (R. 30).

[32] *Id.*

[33] *Id.*

[34] 20 C.F.R. § 404.1567(b).

[35] *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

[36] 20 C.F.R. § 19.929(c)(3).

[37] (R. 31-32).

[38] *Id.*

[39] (R. 31-32).

[40] (R. 45).

[41] (R. 46).

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] (R. 30-33).

[46] (R. 32).

[47] (R. 32).

[48] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

[49] *Id.*

[50] *Carden v. Colvin*, 2016 WL 233657, at *5 (E.D. Pa. Jan. 20, 2016) (alteration in original) (quoting *Keys v. Colvin*, 2015 WL 1275367, at *12 *M.D. Pa. Mar. 19, 2015)).

[51] (R. 51).

[52] *Id.*

[53] (R. 51).

[54] (R. 51-52).

[55] 913.463-010 BUS DRIVER, DICOT 913.463-010.

[56] ECF Doc. No. 11, at 8-11.

[57] *Id.* at 8.

[58] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527[(c)](2)).

[59] 20 C.F.R. § 416.927(c)(2).

[60] *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotation marks omitted).

[61] *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).

[62] *Morales*, 225 F.3d at 317 (internal quotations marks omitted).

[63] *Sherrod v. Barnhart*, No. 01-4731, 2002 WL 31429337, at *3 (E.D. Pa. Oct. 29, 2002).

[64] *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC.").

[65] *Smith v. Astrue*, 961 F. Supp. 2d 620, 643 (D. Del. 2013) (citing *Dula v. Barnhart*, 129 F. App'x 715, 719 (3d Cir. 2005)); *accord Humphreys v. Barnhart*, 127 F. App'x 73, 76 (3d Cir. 2005); *Shelton v. Astrue*, No. 11-75J, 2012 WL 3715561, at *3 (W.D. Pa. Aug. 28, 2012); *Petrowsky v. Astrue*, No. 10-563, 2011 WL 6083117, at *14-15 (D. Del. Dec. 6, 2011).

---

[66] *Salerno v. Comm'r of Soc. Sec.*, 152 F. App'x 208, 209 (3d Cir. 2005); *Hudson v. Comm'r of Soc. Sec.*, 93 F. App'x 428, 431 (3d Cir. 2004).

[67] *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 119 (3d Cir. 2012); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (opinion may be given "more or less weight depending upon the extent to which supporting explanations are provided.").

[68] *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

[69] *Id.*

[70] *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2), '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity . . . .'" *Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

[71] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Chandler*, 667 F.3d at 362 (ALJ could extrapolate based on evidence in record because every fact incorporated in an RFC does not need to have been found by a medical expert).

[72] (R. 255-60).

[73] *See id.*

[74] *Cunningham* 507 F. App'x at 119; *see also Plummer*, 186 F.3d at 429 (opinion may be given "more or less weight depending upon the extent to which supporting explanations are provided").

[75] ECF Doc. No. 11, at 12.

[76] *Rosa v. Colvin*, 956 F. Supp. 2d 617, 622 (E.D. Pa. 2013) (quoting 20 C.F.R. § 404.1519a).

[77] 20 C.F.R. § 404.1519a(b)(1).

[78] 20 C.F.R. § 404.1519a(a).

[79] 20 C.F.R. § 404.1519a(b).

[80] *Allen v. Astrue*, 2007 WL 1276933, at *3 (E.D. Pa. May 1, 2007).

[81] *Rosa*, 956 F. Supp. 2d at 622 (quoting 20 C.F.R. § 404.1519a).

---

[82] *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

[83] *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 158 (3d Cir. 2008) (quoting *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)); *Wert v. Comm'r of Soc. Sec.*, No. 13-5705, 2015 WL 1808594, at *12 (E.D. Pa. Apr. 21, 2005).

[84] *Harrison v. Colvin*, No. 14-719, 2014 WL 5148156, at *4 (W.D. Pa. Oct. 14, 2014) (citing *Turby v. Barnhart*, 54 F. App'x 118, 122-23 (3d Cir. 2002)); *Wert*, 2015 WL 1808594, at *12.

[85] (R. 54).

[86] *Id.*

[87] *Hornyak v. Colvin*, No. 15-74, 2016 WL 1255288, at *1, n.1 (W.D. Pa. Mar. 30, 2016).